## JACOB KORNBLAU *vs.* FRED A. McDERMANT.

Third Judicial District, New Haven, January Term, 1916.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

False representations made to induce one to act to his injury necessarily imply that the representations were made with the intent to deceive; and therefore a statement that they were so made would be superfluous.

Where no question of mistake is involved, one cannot escape his contract obligations by saying that he did not read what he signed.

An agreement for the sale of a restaurant, together with its good-will, was accompanied with the vendor's affidavit that he was "the sole and absolute owner of said business," and that "no other person, firm or corporation had any claim of, in or to said business or any part of the same." It appeared in evidence that the vendor had previously made an agreement with a third person under which the latter was to receive a stated amount weekly and also a one-third interest in the restaurant business after certain contributions to the capital account had been repaid. *Held* that if these facts were satisfactorily established the interest thus created constituted "a claim" upon the business within the meaning of the affidavit, and that the jury might well have been so instructed.

Upon discovering that he has been defrauded in a sale, the vendee may rescind the contract and demand a return of the consideration paid by him, or he may affirm the contract and recover damages for the fraud.

The question whether there has been a waiver of the right to rescind a sale is, upon conflicting evidence, a mixed question of law and fact for the determination of the jury upon proper instructions.

Damages recoverable in an action for fraud are such as are the natural and proximate results of the fraudulent representations; that is, such as must be presumed to have been within the contemplation of the vendor as the probable effect of his deceit.

The purpose and effect of an affidavit is to be determined by its own language and not by allegations made in the pleadings, which is in reality nothing but an attempt to vary the terms of the written instrument by parol.

It is within the discretion of the trial court to grant a motion that all the issues of fact be tried to the jury, notwithstanding such motion was not filed until after the adversary had filed a motion to strike the cause from the jury list because no written notice of what issues were desired for jury trial had been filed, as required by chapter 236 of the Public Acts of 1905.

Kornblau *v.* McDermant.

The submission of interrogatories to the jury is a matter within the discretion of the trial court.

Where fraud is imputed, considerable latitude is allowed in the admission of evidence, and conduct and declarations both prior and subsequent to a sale, as to which fraud is charged, may be admissible.

In the present case the trial court charged the jury that they were to determine "whether all of this loss, as you find it disclosed, or if not all of it, how much of it, was the direct, proximate and essential result of the false representations." *Held* that this clearly and sufficiently indicated that there must be the necessary connection between cause and effect.

The plaintiff claimed to have been injured by the competition of one D, who had an interest in the vendor's restaurant and, after its sale to the plaintiff, opened another one a few feet away. *Held* that the plaintiff was under no obligation to endeavor to prevent D from opening a competing restaurant.

It appeared in evidence that D had organized and controlled a family corporation which opened the competing restaurant instead of D personally, as alleged in the complaint. *Held* that under the circumstances this allegation was sufficiently accurate.

A request to charge which is inapplicable to the issues before the jury is properly refused.

There is no occasion to charge with respect to a claim which the jury could not legally have found to be a fact upon the evidence before them.

Ordinarily little, if any, practical benefit results from instructing the jury that in determining the weight to be given to testimony they may consider the intelligence of the witnesses, their demeanor upon the stand, their apparent candor or lack of it, and other matters of a similar character; and unless the case is one which obviously calls for such observations, their omission from the charge is to be commended.

The defendant contended that the verdict was erroneous as to damages, since it was for the exact amount the plaintiff had paid in in cash ($2,700), and thus indicated that other items, including profit, had been ignored by the jury. *Held* that such contention was unfounded, and that there was no way of telling with certainty how the verdict was made up.

The value of one's services need not be established by direct evidence; it may be found or inferred by the jury from the nature of the services which were rendered and the amount paid for like services to another person.

Exemplary damages are largely within the discretion of the trial court; and where they may properly be awarded by the jury, a motion to set aside the verdict as excessive is not often of any avail.

Under the rule (Practice Book, p. 257, § 193) authorizing the court, in a case calling for both legal and equitable relief and tried to the jury, to render such judgment not inconsistent with the verdict as it may deem proper, it is ordinarily the better procedure to submit to the jury appropriate issues relating to the equitable matters, and upon their finding to grant the proper relief. The failure of the court, however, to make such submission, is not reversible error, as it involves a matter of discretion.

Argued January 18th—decided July 27th, 1916.

ACTION for damages for fraudulent representations in effecting a sale of a restaurant together with its good-will, brought to the Superior Court in Fairfield County and tried to the jury before *Webb, J.;* verdict and judgment for the plaintiff for $2,700, and appeal by the defendant. *No error.*

*John C. Chamberlain* and *George P. Rowell,* for the appellant (defendant).

*Homer S. Cummings* and *Raymond E. Hackett,* for the appellee (plaintiff).

WHEELER, J. The plaintiff offered evidence to prove these facts: On May 2d, 1913, he purchased of the defendant a lunch-room and restaurant, known as the "Stamford Lunch," which was located at Stamford. The transfer consisted of the business and its good-will, certain fixtures and the stock in trade, and was evidenced by a bill of sale. As an inducing cause of the sale the defendant represented in an affidavit accompanying the bill of sale and made by him, that he was the "sole and absolute owner of said business," and that "no other person, firm or corporation had any claim of, in and to the said business . . . or to any part of the same."

As part of the consideration of the transfer the plaintiff demanded and received from the defendant a

further agreement that he and his representatives and assigns would not engage in, or be interested in any way in, or be an employee of, this or any similar business, either directly or indirectly, as an individual or a member of a firm or stockholder of a corporation in a similar business, and that he would not interfere with the customers or the good-will of said business for five years from date of sale.

The affidavit and agreement were procured so that they might evidence the fact that the defendant, who executed the affidavit, was the only person who had any interest in the business, and so that the plaintiff might be protected against competition from any one who had any interest whatsoever in the business. These representations were known to the defendant to be false and fraudulent; he knew that Dinan had this interest. They were made by the defendant to induce the plaintiff to make the purchase, and they were relied on by him in making the purchase. Had the plaintiff known of Dinan's interest he would not have made the purchase without first demanding and receiving from Dinan an agreement similar to that obtained by him from the defendant. Dinan had been employed by the defendant and he continued on in the employ of the plaintiff until the latter part of September. On November 5th following, Dinan opened a similar restaurant less than fifty feet from plaintiff's. Almost immediately the business of the plaintiff fell off and instead of being a source of profit resulted in a financial loss.

The defendant offered evidence to prove that these representations were not false, were not known to defendant to be false, were not made as an inducing cause of the contract of sale, were not relied on by plaintiff, and that there was no connection between them and plaintiff's losses in his business, which were

due to his own fault; that when Dinan left plaintiff's employ the plaintiff was advised of Dinan's alleged interest in the Stamford Lunch and that he contemplated going into a similar business; that the plaintiff took no steps to stop Dinan from going into this business, but continued to operate the restaurant until possession was taken on December 30th, 1913, by the defendant under the provisions of his chattel mortgage.

The appeal is exceptionally and unnecessarily complicated. It embraces errors alleged to have been made prior to the trial, during the trial, in the charge, in the relief granted, and in the refusal to set aside the verdict. and grant a new trial.

We shall take up first the refusal to set aside the verdict, together with some of the questions of law which may be best treated in that connection. The parties agree that the action is one of false and fraudulent representations. They agree, too, as to the essentials of such a cause of action, except in one particular. The defendant insists that proof of the intent to defraud is an essential. The plaintiff acquiesces in this, but maintains that the law implies, from the false representations made to induce a sale, that it is done with intent to deceive. The defendant assigns error in the refusal of the court to charge (13) in accordance with his claim. He asserts that the intent to deceive is absent from the complaint and the proof.

The court charged in accordance with the plaintiff's claim, and in so doing conformed to our rule. *Bradley v. Oviatt,* 86 Conn. 63, 67, 84 Atl. 321. When false representations are made for the purpose of inducing an act to another's injury, necessarily there is the plain implication that these were made with the intent to deceive. Such conduct, with such a result, constitutes fraud. Our discussion of this point, as applied to the allegations of a complaint in *Sallies* v.

*Johnson,* 85 Conn. 77, 82, 81 Atl. 974, is pertinent and conclusive. The court treated the case as one of fraud, and a statement that the representations must have been made with intent to deceive would add nothing to a statement that they were falsely and fraudulently made.

The defendant contends that he did not make, and is not responsible for, the affidavit, since he did not read it or know its contents before signing. The jury might well have found the contrary. No question of mistake is involved, therefore the defendant cannot "escape his contract obligations by saying he did not read what he signed." *West* v. *Suda,* 69 Conn. 60, 62, 36 Atl. 1015.

By the terms of the agreement between Smith, McDermant and Dinan, when the Stamford Lunch began business, the jury might have found that Dinan was to receive a weekly sum, that the capital put in the business by Smith and McDermant was to be repaid, and then Dinan was to have a one-third interest in the business, and upon its sale a one-third interest in the proceeds. Defendant's request 24 called for a charge that if the jury found that the only claim of Dinan in the Stamford Lunch was contained in this agreement between Smith, McDermant and Dinan, this did not come within the meaning of a claim under the affidavit. The trial court correctly interpreted the affidavit as involving the representation that no person other than the defendant had any claim in or to the business, and its purpose as being to secure the fullest possible assurance that no such person had such a claim. The court left it to the jury to find as a fact whether Dinan's interest in the Stamford Lunch was a claim within the meaning of the affidavit. If this had been a question of fact there was abundant evidence from which such a conclusion could have been drawn.

The verdict meant that the jury found this interest was a claim within the meaning of the affidavit. We think the court might well have instructed the jury that if they found the facts as the defendant requested concerning Dinan's interest, they constituted as matter of law a claim within the meaning of the affidavit. The verdict of the jury reached the same result in this particular.

If the jury found that the defendant represented that no one else had any claim to or in the Stamford Lunch, and that Dinan had such an interest, no finding was permissible other than that the representation was false, and the verdict of the jury could only mean this.

There was also evidence, conflicting it is true, that the defendant made these representations in order to induce the purchase, and that the plaintiff made the purchase in reliance upon them; and there was evidence from which the jury might reasonably have found that the plaintiff suffered damage through reliance upon these representations, and not as a result of his own fault, as claimed by the defendant.

The defendant is especially strenuous in asserting that paragraph nine of the complaint is without support in the evidence, viz: that plaintiff would not have made the purchase without securing a noncompetitive agreement from Dinan. The plaintiff testifies to this, as does his attorney, and the circumstances tend to make this clear. It was a natural precaution for the plaintiff to have taken. The jury were justified in finding he would have done so had he known of Dinan's claim.

The defendant claims that the plaintiff, after learning of Dinan's interest in the Stamford Lunch, did not seasonably elect to rescind his contract of purchase, but treated the contract as binding, and is now estopped

from claiming a rescission. The plaintiff claims the exact opposite. Neither disputes the rule of law that if the plaintiff was defrauded he might, on discovering the fraud, have either taken seasonable measure to rescind the contract and demand back what he had given for it, or affirm the contract and recover damages for the fraud. The jury might have found that the plaintiff knew, the last of September, that Dinan had an interest in the Stamford Lunch, and must have found that he knew that Dinan was to open a restaurant nearby him at about this time. Dinan opened his restaurant on November 5th, and immediately the business of the plaintiff began to diminish. Thereupon the plaintiff and defendant entered into negotiations, and finally employed counsel, and on November 28th the contract was in form rescinded. There is no room for claiming that the plaintiff waived his right to rescind after Dinan opened. The claim must relate to the period subsequent to plaintiff's knowledge and prior to the opening by Dinan. The defendant requested the court to charge, as matter of law, that if the plaintiff operated the restaurant after he learned of Dinan's claimed interest, or if he paid any of the purchase-price notes after obtaining this knowledge, then the plaintiff had waived his right to rescind and was estopped by his conduct from so complaining. Whether the plaintiff had a right to rescind was a mixed question of law and fact, unless the facts as matter of law deprived the plaintiff of a right of rescission. In this instance the question is not free from doubt. The jury has so found after a proper and adequate charge upon this point and after a long trial; and we are reluctant to disturb the verdict upon a ground whose decision depends upon many circumstances and the weighing of much and varied testimony.

We take up, next, the errors alleged to have occurred

prior to the trial, and, first, the alleged error in over-ruling the demurrer to the complaint. The action is one for false and fraudulent representation. While the demurrer attacks the complaint for its failure to allege certain elements essential to such an action, the brief and argument of counsel restrict the attack to the claim that the damages sustained are not sufficiently alleged as the natural and proximate result of the defendant's fraudulent representations. It is alleged that the defendant sold the plaintiff a lunch-room and restaurant by falsely and fraudulently representing to the plaintiff that "he was the sole and absolute owner" thereof, and that "no other person, firm or corporation had any claim of, in or to the said business," etc. The damages to be recovered in an action of this character are such as are the natural and proximate consequence of the fraudulent representation complained of; and those results are proximate which must be presumed to have been within the contemplation of the defendant as the probable consequence of his fraudulent representations. *Smith* v. *Bolles*, 132 U. S. 125, 10 Sup. Ct. 39; *Sigafus* v. *Porter*, 179 U. S. 116, 21 Sup. Ct. 34; *Gustafson* v. *Rustemeyer*, 70 Conn. 125, 39 Atl. 104. The complaint further alleges that at the time of the purchase Dinan was interested in the Stamford Lunch as a partner or otherwise, and that had plaintiff known this he would not have made the purchase unless he had received from Dinan an agreement similar to the agreement the defendant gave him, by which he agreed not to engage in a similar work or business in Stamford for five years from the date of sale. It also alleges that some time after the purchase Dinan left the Stamford Lunch where he had been employed, and opened a nearby lunch-room and restaurant, whereupon the plaintiff's business fell off greatly, and as a conse-

quence of Dinan's business the plaintiff's lunch-room and restaurant had become worthless.

The complaint shows that the plaintiff sought to guard against competition from any one who had an interest in the Stamford Lunch. It is alleged that Dinan had such an interest, and the defendant knew this and failed to disclose it to the plaintiff, and that had he done so the plaintiff would have protected himself against loss through Dinan's competition. These allegations state the damage to the plaintiff, and they state facts which show that this defendant must have contemplated these results as the probable consequence of his fraudulent representations. The representations inducing the sale were contained in the affidavit of title.

The defendant, in his fifth defense to the complaint, alleges the purpose of the affidavit under the law, practice, and custom in New York, the jurisdiction of its making. This was, as the trial court observed, in effect an attempt to vary by parol the terms of the affidavit, and the demurrer to this defense was properly sustained.

The defendant moved to strike the cause from the jury trial list, chiefly because the plaintiff did not, within three weeks after issues were joined, file with the clerk of the Superior Court a written notice stating whether he desired all such issues to be tried to the jury, and, if not, which of them he desired to be so tried, in accordance with chapter 236 of the Public Acts of 1905 (p. 441). Pending this motion the appellee filed his motion, designed to avoid the effect of the appellant's motion, that the court order, pursuant to statute, that all issues of fact raised in the cause be tried to the jury. These motions were pending for decision at the same time, for on the same day the court granted the appellee's motion and denied the appellant's. The

court, in the exercise of its discretion, had the power to grant the motion under this statute, since the cause was one in which equitable relief was demanded, and no abuse of discretion appears. The formal order, upon appellee's motion, adjudged that all the issues that had been joined should be tried to the jury; it was more limited than the decision that "all issues of fact be tried to the jury." The formal order might have been corrected to conform to the decision. After trial, and under such conditions, a technical objection should not be regarded.

Error is predicated upon the refusal of the court to submit interrogatories to the jury, and in not requiring the plaintiff to designate the issues of fact he desired tried to the jury, and in not submitting certain questions to the jury. These matters were within the discretion of the court. *Freedman* v. *New York, N. H. & H. R. Co.*, 81 Conn. 601, 71 Atl. 901.

Certain conduct and declarations of the defendant prior and subsequent to the sale are claimed to have been erroneously admitted in evidence. These tended to affect the good faith of the defendant and cannot be said to have been inadmissible. "Where fraud is imputed, considerable latitude must be allowed in the admission of evidence." *Wilcox* v. *Downing*, 88 Conn. 368, 373, 91 Atl. 262.

Error is assigned in the refusal to charge the 18th and 19th requests. The claim is that due prominence is not given to the necessary *sequitur* between the interest of Dinan and the loss to the plaintiff. The court charged: "The question for you to determine is whether all of this loss as you find it disclosed, . . . or if not all of it, how much of it, was the direct proximate and essential result of the . . . false representations." This was a clear, accurate and sufficient instruction upon this point.

Requests 23 and 23c are based upon a wrong conception of the cause of action. The plaintiff was under no obligation to endeavor to restrain Dinan from entering a similar business; his proof is that he would have made this endeavor had he known that Dinan had an interest in the business.

Request 23½ asked that the jury be directed to return a verdict for the defendant, as the allegation was that Dinan opened the lunch-room, while the proof was that the corporation did. This request was properly refused. The corporation was formed and controlled by Dinan as a family corporation and the restaurant operated by Dinan. Under such circumstances an allegation that Dinan opened the restaurant was sufficiently accurate.

The defendant requested a charge (24–26) as to what constituted a partnership. In his complaint the plaintiff claimed that Dinan was a partner or otherwise interested in the Stamford Lunch. The court ignored the claim of partnership—whether it was made on the trial does not appear—and practically confined the representation to that part of the affidavit that "no other person had any claim upon or interest in it," that is, in the Stamford Lunch. Such a narrowing of the issue was not harmful to the defendant, and conformed to the facts in evidence. The facts did not justify a conclusion of partnership, and there is no possibility that the jury reached a verdict by finding Dinan was a partner. A request to charge which is inapplicable to the issues before the jury should be refused. *Purdy* v. *Watts*, 88 Conn. 214, 90 Atl. 936.

The request to charge that if the jury found that the defendant had not become directly or indirectly interested in a restaurant in Stamford, the verdict should be for the defendant; and the request 29, that the defendant's possession of the Stamford Lunch

under his chattel mortgage was not a violation of his agreement not to engage in the lunch business in Stamford, related to issues which were inapplicable to the case.

Request 35, which enumerated what the jury should consider in determining the weight to be given the testimony of the witnesses, states the general rule so often given by trial judges. It is true as a general rule of law, but in at least the great majority of cases wholly without practical significance for the jury. It may be that in the occasional case it is of some value, but in the average case it serves for cumbrous adornment instead of practical utility. In this case no harm was done by its omission, and we commend the judgment of the trial court in omitting it from his charge.

Other requests to charge have either been treated in other parts of the opinion, or were substantially complied with in the charge, or are not deemed of sufficient pertinency to require consideration.

The charge as a whole seems to us a fair and adequate presentation of the issues.

The defendant attacks the verdict as not justified by the evidence upon any theory of the case. Under the charge the jury might have found, as elements of damage, the amount paid in in cash on the pur-

| | |
|---|---:|
| chase, | $2,250 |
| the amount paid in on the notes given, | 450 |
| the amount paid for improvements in the Lunch, | 384 |
| the losses incurred in the conduct of the business, | 420 |
| the interest on the sums paid in, at least | 100 |
| | $3,604 |
| less the profits received, | 1,560 |
| leaving a balance of | $2,044. |

To this should be added the value of plaintiff's services, and a sum for exemplary damage.

The defendant does not criticise these several items as improper elements of damage. What he says is, that the amount of the verdict, exactly equalling the amount of cash paid in, indicated that the other items, including that of the profits earned, were ignored by the jury. This does not follow as a matter of law. The jury may have considered these several items, including a sum for the plaintiff's services and for exemplary damages. There is no way of certainly telling how the verdict was made up.

The defendant further says that there was no evidence before the jury of the value of the plaintiff's services, and attacks the charge for permitting this to be considered by the jury. This we think is an error. There was evidence of what Dinan received, and evidence of the nature of the services rendered, and from these the jury might fairly have found the value of the services even though there was no direct evidence of the value of the plaintiff's services. *Rogers* v. *Fitzgerald*, 72 Conn. 731, 43 Atl. 551; *Gray* v. *Fanning*, 73 Conn. 115, 46 Atl. 831.

When exemplary damages are claimed, a motion to set aside a verdict as excessive is not often of any avail. In every case its granting rests largely in the discretion of the trial court, which in this case we are unable to say was abused.

The defendant complains that the charge left it to the jury to include the value of the services of plaintiff's wife. The defendant asserts in his brief that the verdict is made up of the items of moneys paid, hence the defendant concedes that it does not include anything for the wife's services. Aside from this, the court's final submission of the elements to be considered by the jury in estimating the damages did

The State ex rel. Eliott v. Lake Torpedo Boat Co.

not include this item; its reference to it was a statement of plaintiff's claim. We do not think the jury were misled into considering it.

The assignment of error in decreeing the equitable relief given, is not well taken. Practice Book (1908) p. 257, § 193, gave the court authority, in a case calling for both legal and equitable relief and tried to the jury, to render such judgment, not inconsistent with the verdict, as it might deem proper. We incline to the view that it is ordinarily, in such a case, the better practice to submit to the jury appropriate issues relating to the matters of equitable relief claimed, and upon their finding to grant the proper relief. *Roy* v. *Moore*, 85 Conn. 159, 168, 82 Atl. 233. But the failure of the court to make such submission is not a reversible error, for it is a matter, by our rules, placed within the discretion of the court.

There is no error.

In this opinion the other judges concurred.